UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| BLACK WARRIOR RIVERKEEPER, INC., } } } | |
| Plaintiff, } } | |
| v. } } | Case No.: 2:13-CV-00763-RDP |
| SHANNON, LLC, } } | |
| Defendant. } | |

## MEMORANDUM OPINION

This case is before the court on Defendant's Motion to Dismiss (Doc. #32), filed on July 24, 2013. The Motion (Doc. #32) has been fully briefed. (Docs. #35, #39, #42). For the reasons outlined below, the Motion (Doc. #32) is due to be denied.

**I.   Procedural History**

Plaintiff Black Warrior Riverkeeper, Inc. ("Plaintiff") initiated this lawsuit by filing a Complaint (Doc. #1) on April 24, 2013. Defendant Shannon, LLC ("Defendant") responded by filing a Motion to Dismiss (Doc. #7) on May 16, 2013, and, shortly thereafter, also filed a Motion to Strike (Doc. #17). However, on July 10, 2013, the court granted Plaintiff's Motion to File First Amended Complaint (Doc. #23) and administratively terminated Defendant's Motions to Dismiss (Doc. #10) and Strike (Doc. #17). That same day, Plaintiff filed its First Amended Complaint (Doc. #31).

Plaintiff's first Amended Complaint (Doc. #31) states seven causes of action: (1) violation of § 301(a) of the CWA due to the discharge of pollutants in excess of the limitations set out in the Permit (Count I) (Doc. #31 at ¶¶ 13-33); (2) violation of § 301(a) of the CWA due

to the discharge of pollutants from point sources not covered by the Permit (Count II) (Doc. #31 at ¶¶ 34-43); (3) violation of Ala. Admin. Code r. 880-X-10C-.13(5), adopted pursuant to the SMCRA, due to the discharge of pollutants in excess of federal water quality effluent limitations (Count III) (Doc. #31 at ¶¶ 44-51); (4) violation of Ala. Admin. Code r. 880-X-10C-.13(5), adopted pursuant to the SMCRA, due to the discharge of pollutants in excess of state water quality effluent limitations (Count IV) (Doc. #31 at ¶¶ 52-59); (5) violation of Ala. Admin. Code r. 880-X-10C-.13(5), adopted pursuant to the ASMCRA, due to the discharge of pollutants in excess of federal water quality effluent limitation guidelines (Count V) (Doc. #31 at ¶¶ 60-65); (6) violation of Ala. Admin. Code r. 880-X-10C-.13(5), adopted pursuant to the ASMCRA, due to the discharge of pollutants in excess of state water quality effluent limitation guidelines (Count VI) (Doc. #31 at ¶¶ 66-70); and (7) violation of Ala. Admin. Code r. 880-X-10C-.28, adopted pursuant to the ASMCRA, for conducting "surface mining activities" within one hundred feet of a perennial or intermittent stream (Count VII) (Doc. #31 at ¶¶ 71-76).

Defendant responded with another Motion to Dismiss (Doc. #32). Plaintiff filed a Response (Doc. #35) on July 31, 2013, Defendant filed a Reply (Doc. #39) on August 2, 2013, and Plaintiff filed a Sur-Reply (Doc. #42) on August 9, 2013. The Motion (Doc. #32) is now properly under submission.

**II.     Factual Allegations**

Plaintiff is a non-profit corporation that works to protect and restore the Black Warrior River and its tributaries. (Doc. #31 at ¶ 8). Defendant is the owner and operator of Shannon Mine, which is located in the Alabama counties of Jefferson and Tuscaloosa. (Doc. #31 at ¶ 11).

Pursuant to the Clean Water Act, and with the approval of the U.S. Environmental Protection Agency, the State of Alabama established a National Pollutant Discharge Elimination

System (NPDES) permit program in October 1979. (Doc. #31 at ¶ 14). On March 16, 2009, as part of the aforementioned program, the Alabama Department of Environmental Management (ADEM) issued NPDES Permit No. AL0076597 ("the Permit") to Twin Pines Coal Company, Inc. ("Twin Pines").[1] (Doc. #31 at ¶¶ 14-15; Doc. #32, Ex. A at 7). The Permit authorized the limited discharge of pollutants from Shannon Mine to surrounding waters. (Doc. #32, Ex. A at 7). ADEM transferred the Permit from Twin Pines to Defendant in January 2011 and modified the Permit in January 2012 by establishing additional discharge limitations. (Doc. #32, Ex. A at 7).

On February 22, 2013, Plaintiff sent a letter to Defendant and various environmental agencies, conveying its intent to bring suit against Defendant for violations of the Clean Water Act ("CWA"), the Surface Mining Control and Reclamation Act ("SMCRA"), and the Alabama Surface Mining Control and Reclamation Act ("ASMCRA"). (Doc. #31, Ex. A at 1). Plaintiff alleged that Defendant had exceeded the Permit's discharge limitations on numerous occasions, discharging impermissible amounts of Iron, Selenium, and "total suspended solids" twenty-four times between February 2010 and November 2012. (Doc. #31, Ex. A at 9).

On March 24, 2013, ADEM published notice of its plan to issue an order addressing Defendant's alleged discharge violations. (Doc. #32, Ex. A at 20). In the notice, ADEM outlined the details of its proposed order, which would require the payment of a civil penalty and the implementation of numerous corrective measures. (Doc. #32, Ex. A at 20). ADEM invited interested parties to comment on its proposed order, an invitation that Plaintiff accepted by submitting a comment letter on April 23, 2013. (Doc. #32, Ex. A at 20; Doc. #32 at ¶ 4). The

---

[1] Although the exact nature of their relationship is not immediately clear, it appears that Twin Pines and Defendant Shannon, LLC are related, if not completely intertwined, entities. (*See* Doc. #32, Ex. A at 2 (Declaration of David Muncher)—"I am a Member of the Management Committee of Twin Pines, LLC, which is the sole member of Shannon, LLC.").

following day, April 24, 2013, Plaintiff initiated this lawsuit by filing its original Complaint (Doc. #1).

On May 1, 2013, ADEM issued a Consent Order, which mirrored the proposed order described in the public notice. Among other things, the Consent Order required Defendant to pay a penalty of $36,270, "fully comply with the effluent limitations of the Permits not later than 180 days after issuance of this Order," and prepare an Engineering Report identifying the origins of the noncompliance and developing a plan for achieving compliance. (Doc. #32, Ex. A at 10-12). The Consent Order purported to "operate as a full resolution of the violations, which are cited in this Consent Order." (Doc. #32, Ex. A at 12).

On July 10, 2013, Plaintiff filed an Amended Complaint (Doc. #31), which alleged that Defendant had continued to commit discharge violations after the entry of ADEM's Consent Order. (Doc. #31 at ¶ 36-40). Specifically, Plaintiff alleged that it measured discharges on May 17, 2013 and May 22, 2013 that exceeded the Permit's limitations, and that it also "observed" three discharges on May 22, 2013 that came from unpermitted point sources. (Doc. #31, Ex. B; Doc. #31 at ¶ 36).

### III. Standard of Review

Challenges to subject-matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure can exist in two substantially different forms: facial attacks and factual attacks. *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1260 (11th Cir. 2009). When presented with a facial attack on the complaint, the court determines whether the complaint has sufficiently alleged subject-matter jurisdiction. *Sinaltrainal*, 578 F.3d at 1260. The court proceeds as if it were evaluating a Rule 12(b)(6) motion; that is, it views the complaint in the light most favorable to the plaintiff and accepts all well-pled facts alleged in the complaint as true. *Id*.

On the other hand, a factual attack questions "the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered." *Id.* (citing *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990)). When a court is confronted with a factual attack, the standard of review is considerably different:

> [T]he trial court may proceed as it never could under 12(b)(6) or Fed. R. Civ. P. 56. Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction— it's very power to hear the case—there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.

*Lawrence*, 919 F.2d at 1529 (citing *Williamson v. Tucker*, 645 F.2d 404, 412 (5th Cir.), *cert. denied*, 454 U.S. 897 (1981)).

**IV.   Discussion**

After careful review of the Rule 56 record and the parties' briefs, and for the reasons stated below, the court concludes that Defendant's motion should be denied.

**A.   Overview of Defendant's Arguments in Support of the Motion to Dismiss**

Defendant challenges Plaintiff's First Amended Complaint on Rule 12(b)(1) grounds, arguing that the court lacks subject-matter jurisdiction over the matter. Defendant advances two arguments in seeking the wholesale dismissal of Plaintiff's claims. Defendant asserts that (1) the court lacks subject-matter jurisdiction because Plaintiff only alleges violations that are "wholly past," and (2) the court lacks subject-matter jurisdiction because the suit has been rendered moot by ADEM's consent order. (Doc. #32 at 1-2). Each of Defendant's arguments are addressed below.

B.     **Defendant Has Not Sufficiently Demonstrated That the Discharge Violations Alleged by Plaintiff Are "Wholly Past"**

Under Section 505(a) of the CWA, private citizens are entitled to bring suit against any person "alleged to be in violation of" limitations contained in a federal or state NPDES permit. 33 U.S.C. § 1365(a)(1).  The plain language of the citizen-suit provision is "primarily forward-looking," suggesting that "the harm sought to be addressed by the citizen suit lies in the present or the future, not in the past." *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Foundation, Inc.*, 484 U.S. 49, 59 (1987).  As a result, "Section 505(a) does not permit citizen suits for wholly past violations . . . ." *Gwaltney*, 484 U.S. at 64.  Indeed, in order for subject-matter jurisdiction to attach under Section 505(a), "the citizen-plaintiffs [must] make a good-faith allegation of *continuous or intermittent* violation." *Id.* (emphasis added).

In instant case (which was brought pursuant to Section 505(a)), Defendant argues that subject-matter jurisdiction is lacking, because the violations alleged by Plaintiff are "wholly past," the last having occurred in "January 2013." (Doc. #32 at 8).  At first glance, this argument seems to completely ignore Plaintiff's Amended Complaint, which alleges "continuous or intermittent violation[s]" (*i.e.*, those violations that occurred in May 2013—after both the filing of this lawsuit and the entry of ADEM's Consent Order). (Doc. #31, Ex. B; Doc. #31 at ¶ 36).  However, actually, Defendant addresses this apparent incongruence by arguing that the court should not consider the continuing violations alleged by Plaintiff because evidence about those was developed through trespass. (Doc. #32 at 7-9).  Indeed, Defendant asserts that the primary basis of Plaintiff's allegations—samples taken from various discharges—could have only been obtained by way of trespass on Shannon Mine property. (Doc. #32 at ¶¶ 8-14).  Furthermore, Defendant seizes upon the aforementioned language in *Gwaltney* (jurisdiction exists where

6

"citizen-plaintiffs make a *good-faith* allegation of continuous or intermittent violation"), arguing that any allegations based on trespass cannot be considered "good-faith" allegations.

Defendant's trespass argument is plagued by at least two problems (which are somewhat inter-related). First, Defendant has failed to cite to any legal authority that directly addresses the interplay between an act of trespass and the term "good faith," as the latter is used in *Gwaltney*. (*See* Docs. #32 & #39). To be sure, the manner in which the term "good faith" is used in *Gwaltney* seems to speak more to the veracity or plausibility of a given allegation, rather than the legal propriety of the means with which such an allegation was discovered or documented. Second, Defendant's trespass-based theory, even if valid, should only be evaluated in relation to a well-developed record. This presents a problem at this early stage of litigation, when the factual record is not so developed. Although Defendant submitted an affidavit that purports to demonstrate Plaintiff's alleged trespass (Doc. #32, Ex. B at 2-4), the court cannot conclude, without greater factual development, that a trespass did, in fact, occur (and, if it did, the scope of the trespass and how it should be treated here under *Gwaltney's* teachings). As such, the court declines at this time to dismiss Plaintiff's Amended Complaint on the basis of Defendant's "wholly past" theory.

### C. The Court Lacks the Factual Record Necessary to Properly Rule on the Issue of Mootness

Under Article III of the Constitution, federal courts can only entertain "cases or controversies." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559-60 (1992). "[T]he requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness) . . . A case is moot when it no longer presents a live controversy with respect to which the court can give meaningful relief." *Frulla v. CRA Holdings, Inc.*, 543 F.3d 1247, 1250-51 (11th Cir. 2008). Indeed, "[w]hen events subsequent to the

commencement of a lawsuit create a situation in which the court can no longer give the plaintiff meaningful relief, the case is moot and must be dismissed." *Fla. Ass'n of Rehab. Facilities v. State of Fla. Dep't of Health and Rehabilitative Serv., et al.*, 225 F.3d 1208, 1217 (11th Cir. 2000).

Here, Defendant asserts that "the consent order entered between ADEM and [Defendant], and the penalty and injunctive relief provided therein, has rendered [Plaintiff's] lawsuit and the relief sought therein moot . . . ." (Doc. #32 at 19). In essence, Defendant argues (1) that Plaintiff's suit addresses the same violations that underlie ADEM's consent order, and (2) that ADEM's consent order so thoroughly remedied the violations at issue that no further relief is available to Plaintiff. (Doc. #32 at 12-19). However, "[i]n seeking to have a case dismissed as moot, [. . .] the defendant's burden is a heavy one. The defendant must demonstrate that it is *absolutely clear* that the allegedly wrongful behavior could not reasonably be expected to recur." *Gwaltney*, 484 U.S. at 66 (internal quotations omitted) (emphasis added). This stringent standard is intended to prevent violators from voluntarily ceasing their illegal activity when faced with the prospect of litigation, only to resume their violative activity when the threat of litigation has passed. In other words, this rule guards against attempts "to evade sanction by predictable 'protestations of repentance and reform.'" *Id.* at 67 (quoting *United States v. Oregon State Medical Society*, 343 U.S. 326, 333 (1952)).

That is not to say that it is impossible to demonstrate mootness in a context such as this one, and, in fact, Defendant's Motion (Doc. #32) extensively discusses a similarly situated case from this district, *Black Warrior Riverkeeper, Inc. v. Cherokee Mining, LLC*, 637 F.Supp.2d 983 (N.D. Ala. 2009) (Acker, J.), in which just such a result occurred. Indeed, in *Cherokee Mining*, the district court found that Plaintiff Black Warrior Riverkeeper's suit, based on violations of a

8

NPDES permit, was rendered moot by a consent order entered into between ADEM and Defendant Cherokee Mining. *Cherokee Mining*, 637 F.Supp.2d at 991.  However, the *Cherokee Mining* court's conclusion was largely based on factors that are absent in the present case, namely a lengthy period (almost two years) in which to observe Defendant's implementation of the consent order and the participation of ADEM in the case. *Id*. at 989.  ADEM's role seems to have been particularly influential, as it represented to the court that (1) the consent order had resolved the violations alleged in Plaintiff's suit, (2) Defendant had achieved full compliance with the consent order, and (3) Defendant's lone discharge violation since the entry of the consent order was not indicative of continuing impermissible activity. *Id*.

Here, the court does not presently have the benefit of time or ADEM's participation. Less than a year has passed since the entry of the consent order between ADEM and Defendant, and there is little evidence before the court that speaks to the extent of Defendant's compliance with the order.  Defendant has provided affidavit evidence of its compliance with the consent order's "submittal requirements" and its lack of notice from any environmental agencies regarding further violations. (Doc. #32, Ex. B at 3).  However, the court requires a more extensive factual record—such as the one in *Cherokee Mining*—in order to resolve the issue of mootness in this case.  In the end, Defendant may very well be able to demonstrate (in the future) that Plaintiff's case is moot; however, on the present record, Defendant has yet to make it "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Gwaltney*, 484 U.S. at 66 (internal quotations omitted).  As such, the court declines at this time to dismiss Plaintiff's Amended Complaint as moot.

## V. Conclusion

For the reasons stated above, Defendant's Motion to Dismiss (Doc. #32) is due to be denied. A separate order consistent with this memorandum opinion will be entered.

**DONE** and **ORDERED** this March 24, 2014.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE